**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

MARCUS BRANDON BETTS,
              *Defendant-Appellant.*

No. 06-50205

D.C. No.
CR-04-00172-
DOC-3

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
January 10, 2007—Pasadena, California

Filed December 14, 2007

Before: Andrew J. Kleinfeld, Ronald M. Gould, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Kleinfeld

16405

**COUNSEL**

James H. Locklin, Deputy Federal Public Defender, Los Angeles, California, for the appellant.

Douglas F. McCormick, Assistant U.S. Attorney, Santa Ana, California, for the appellee.

**OPINION**

KLEINFELD, Circuit Judge:

We review several conditions of supervised release.

**FACTS**

Marcus Betts worked for TransUnion LLC, one of the three major credit reporting agencies. He was the leader of the unit that decided disputes, where people claimed that some black mark on their credit score was inaccurate. He took bribes to conspire with his codefendants to falsely improve people's

credit scores. His coconspirators would take money from people who wanted to improve their credit, and send letters that Betts would put in TransUnion's database in such a way as to delete negative entries. It was a kind of private sector ticket-fixing scheme, with the outside people calling themselves "Second Chance Financial Services," designed to make it easier for people with bad credit records to borrow money. Betts did not create or direct the conspiracy, but was the essential inside man at TransUnion and helped his coconspirators compose an effective form letter. Betts falsified 654 credit histories, generating around a million dollars in losses to lenders who got stuck with the bad risks.

He pleaded guilty to conspiracy under 18 U.S.C. § 371, and raises no issues on appeal except with regard to sentencing. He claims that some of the conditions of supervised release are too restrictive. The judgment applies these conditions to the entire three-year period of supervised release.

## ANALYSIS

We review conditions of supervised release for abuse of discretion.[1]

### 1.   The Employment Restriction.

The two most onerous conditions challenged were justified by the record in this case. The district court restricted Betts's employment after his release from prison to keep him away from his employers' money, and required him to allow searches without warrant.

The employment restriction that Betts challenges says that "the defendant shall not be employed in any capacity wherein he has custody, control, or management, of his employer's

---

[1]*United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006) (quoting *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004)).

funds, lines of credit, or any similar sources of monies." Betts argues that this condition was an abuse of discretion because his crime did not involve stealing from his employer, so the condition unduly restricts his employability. Also, he argues, the district court did not expressly determine whether the condition is necessary to protect the public, and if so, what minimum time and extent would sufficiently protect the public.

[1] Betts was an employee of a credit reporting company, but his fraud would harm, at least in the short run, only the banks that loaned money to the debtors whose history he faked, not his employer. Nevertheless, as an employee, he owed the credit reporting company a fiduciary duty of loyalty.[2] An employee's duty of loyalty includes a duty to act solely for the interests of his employer within the business area for which he is employed, account to the employer for money received in connection with his work, and avoid undisclosed interests that might affect his conduct as an employee.[3] An employee who takes a bribe to benefit some third party violates his duty to his employer, even if the harm induced by the bribe is to a third party. Betts took bribes to use his employment duties in a way that would distort the credit reports his employer provided, with obvious potential harm to lenders who relied on the reports.

[2] The applicable statutes and guidelines enabled the judge to restrict employment as he did. The district court may, subject to other statutory provisions and sentencing guidelines, impose as a condition of supervised release any of the discre-

---

[2]Restatement (Second) of Agency § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.").

[3]Warren A. Seavey, *Law of Agency* § 147 (1964) ("[W]ithin the area of his employment and when not acting in the protection of a superior or equal interest, [an agent's] duty is to give single-minded attention to the principal's affairs and to subordinate personal interests, except with the principal's consent.").

tionary conditions available for probation.[4] Among these are that the defendant "refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances."[5]

The applicable sentencing guideline in substance repeats the statutory provision and adds some restraint on its use. The condition has to be "reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted."[6] The purpose of the occupational restrictions is to prevent crime but facilitate lawful employment, so occupational restrictions must be used prophylactically rather than as punishment.[7]

[3] The question here is how close the crimes protected against by the employment restriction have to be to the crimes of conviction. The answer implied by the statutes and guidelines, is, close enough to protect the public from reasonably similar crimes. An employee such as Betts, who has taken bribes to betray his employer, has sufficiently demonstrated his untrustworthiness in the employment relationship to be kept away from employers' money for three years. That the crime of embezzlement differs from the crime of conspiracy, and that Betts's conspiracy used the employer as a vehicle rather than as the victim, do not eliminate the "reasonably direct" relationship needed. It is not sufficient, for purposes of protecting the public, that the barn door only be locked against the commission of a substantially identical crime. The public is entitled to be protected against crimes flowing from

---

[4]18 U.S.C. § 3583(d).

[5]18 U.S.C. § 3563(b)(5).

[6]U.S. Sentencing Guidelines Manual § 5F1.5(a)(2) (2006).

[7]U.S. Sentencing Guidelines Manual § 5F1.5 cmt. background (2006).

the same character trait demonstrated by the crime. Betts was a dishonest employee who betrayed his employer.

The judge expressly stated his view that the employment restriction had a connection to the crime committed, and that Betts's employment in any capacity needed scrutiny to protect against fraud. Betts argues that this explanation was inadequate but has cited no authority requiring the judge to say more. Circuit law establishes that a sentencing judge is not required "to articulate on the record at sentencing the reasons for imposing each condition"[8] of supervised release, where we can determine from the record whether the court abused its discretion.

## 2.  Warrantless Searches.

The judgment provides that "the defendant shall submit person and property to search and seizure at any time of the day or night by any law enforcement officer, with or without a warrant." The judge said that the reason for this condition was "the underlying crime itself, and the fraudulent nature of that crime."

[4] Betts argues that the court abused its discretion because he had no prior convictions and had fully accepted responsibility for his crime. We cannot characterize the judge's exercise of discretion as an abuse, even though it is very intrusive. First, the public is entitled to protection against the possibility that Betts's conduct may not have been so aberrational as he contends, and considering his skill and success in committing this subtle fraud, protection will not be easy.

[5] Second, the Supreme Court recently held in *Samson v. California*, that a similarly worded condition imposed by statute on all California parolees did not violate the Fourth Amendment, even though the condition did not require rea-

---

[8]*United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003).

sonable suspicion.[9] The Court considered the high risk of recidivism for people convicted of crimes, and the problem that "[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality."[10] Because the blanket requirement imposed by California on state parolees did not violate the Fourth Amendment, *a fortiori* the individualized requirement imposed in this case on supervised release does not. There is no sound reason for distinguishing parole from supervised release with respect to this condition. The federal system has abolished parole, and uses supervised release to supervise felons after they get out of prison.[11] People on supervised release have not completed their sentences, they are serving them. The Court in *Samson* itself drew the analogy to supervised release.[12] After *Samson*, there is no room for treating the search condition in this case as an abuse of discretion.

### 3.  Windfalls.

The judgment provides that "***as directed by the Probation Officer***, the defendant shall apply monies received from income tax refunds, lottery winnings, inheritance, judgments, and any anticipated or unexpected financial gains to the outstanding Court-ordered financial obligation."[13] The "Court-ordered obligation" is the $967,340 restitution order, which is itself not challenged.

With respect to this condition, the district court erred by delegating what would be done to the probation officer. The problem is not that part or all of the money will be applied to restitution, but rather that the probation officer instead of the judge will decide how much.

[9]*Samson v. California*, 126 S.Ct. 2193, 2202 (2006).

[10]*Id.* at 2201.

[11]Pub.L. No. 98-473, 98 Stat. 2177 (1984).

[12]*Samson*, 126 S.Ct. at 2201.

[13]Emphasis added.

The controlling statute says that "the court" must make the decisions about the terms of restitution.[14] The statute specifically provides that "the court" makes the decision on changes in terms because of changes in the defendant's financial circumstances. The defendant has to notify the court and the prosecution, and then the court decides on motion of either party or on its own motion what changes to make.[15]

[6] We remanded twice in the same case, *United States v. Gunning*,[16] holding that the district judge erred by delegating the scheduling of restitution payments, first to the probation officer and then to the Bureau of Prisons. We held, in accord with our sister circuits, that "fixing the terms for making restitution . . . is non-delegable,"[17] and we said as clearly and emphatically as we could that "the district court simply does not have the authority to delegate its own scheduling duties [for paying restitution] — not to the probation office, not to the BOP, not to anyone else."[18] The sentence has to be vacated and remanded because the district court erred by delegating to the probation office how large restitution payment terms would be affected by windfalls.

[7] The motion procedure outlined in section 3664(k) does leave open a practical problem, that a windfall will be spent

---

[14]18 U.S.C. § 3664(f)(2).

[15]18 U.S.C. § 3664(k) ("A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstance from the United States or from the victim . . . . Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.").

[16]*United States v. Gunning*, 401 F.3d 1145 (9th Cir. 2005); *United States v. Gunning*, 339 F.3d 948 (9th Cir. 2003).

[17]*Gunning*, 401 F.3d at 1149.

[18]*Id.* at 1150.

or hidden before the notification and motion process is completed. That problem can be solved by altering the windfall condition to require the defendant to turn over every penny of a tax refund, payment on a judgment, inheritance, lottery winnings, etc., to the probation officer for deposit in a court account until the court issues its order pursuant to section 3664(k). Such a condition would preserve the money while the court, not the probation officer, decided how it should be applied. For inheritances, settlements and judgments received during incarceration, the statute dictates that all the money be applied to restitution,[19] but there may be more room for judicial discretion for income tax refunds and for money received after incarceration ends.

### 4.  Alcohol.

The judgment commands that "the defendant shall abstain from using illicit drugs or alcohol and abusing prescription medications during the term of supervised release." No issue is raised regarding illicit drugs or abusing prescription medications, but Betts challenges the requirement that he "abstain from using . . . alcohol." On the record before us, he is correct.

There is nothing in the record to suggest that the judge thought there was any past abuse of alcohol, or any relationship between alcohol and Betts's crime. Betts appears to have lost this liberty because of a policy disagreement between the federal defender's office and the court, and a misallocation of the burden of proof. Presentence reports always have a paragraph about substance abuse, and in Betts's report the probation officer wrote that "[o]n the advice of counsel, Betts declined to discuss his past or current use of illicit substances or alcohol." The supervised release statute requires urinalysis for drugs as an explicit condition of supervised release unless the judge exercises discretion otherwise. The probation officer

---

[19]18 U.S.C. § 3664(n).

recommended that drug testing be suspended because "the defendant poses a low risk of future substance abuse," and the judge accepted his recommendation.

[8] In *United States v. Weber*, we acknowledged that "a district court's discretion [in imposing conditions of supervised release] is not . . . boundless."[20] We identified 18 U.S.C. § 3583 as the "principal statute governing a district court's ability to impose conditions . . . ."[21] After examining § 3583 and the statutes referenced therein, we concluded that "[u]nder this statutory scheme, . . . conditions of supervised release 'are permissible only if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender' " and "involve 'no greater deprivation of liberty than is reasonably necessary for the purposes' of supervised release."[22] And we explained that this determination must be an "individualized" one based on "the nature and circumstances of the offense and the history and characteristics of the defendant."[23] The requirement of individualization leaves no room for blanket policies applicable without individualized consideration regarding discretionary conditions.

[9] Betts contends that the condition prohibiting him from drinking alcohol fails the test set out in *Weber*.[24] We agree. No one suggests that alcohol played any role in Betts's crime. And there was no evidence that Betts had any past problems with alcohol. Under these circumstances, we think it impossi-

---

[20]*United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006).

[21]*Id.*

[22]*Id.* at 558 (quoting *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (internal quotation marks omitted)).

[23]*Weber*, 451 F.3d at 566 (9th Cir. 2006) (quoting 18 U.S.C. §§ 3583(d)(1), 3553(a)(1)).

[24]In addition to the condition prohibiting Betts from drinking any alcohol at all, the judge imposed a condition prohibiting Betts from using alcohol *excessively*. Betts did not appeal the prohibition on excessive drinking and our decision does not affect its validity.

ble to say that the condition imposed bears a reasonable relationship to rehabilitating the offender, protecting the public, or providing adequate deterrence.

In so concluding, we join the other two circuits to have faced this precise question. In *United States v. Prendergast*, the Eighth Circuit vacated a no alcohol condition, concluding that it did not "reasonably relate to the goals of rehabilitation and protection" because "[t]here is no evidence indicating that Prendergast suffers from alcoholism or that the use of alcohol in any way contributed to the commission of the offense . . . . The district court failed to make any specific findings . . . that the defendant . . . otherwise is in need of any substance abuse rehabilitation."[25] Similarly, in *United States v. Modena*, the Sixth Circuit vacated a no alcohol condition, concluding that it did "not bear a reasonable relationship to either rehabilitating Modena or protecting the public" because "[n]either alcohol nor drug use played a role in Modena's crime," and the record does not "indicate that Modena has any substance abuse problem."[26]

It is true that our circuit has, on several occasions, upheld the imposition of a no alcohol condition. However, in each of these cases, we upheld the condition because there was some evidence of prior alcohol, drug, or prescription medicine abuse. In *United States v. Miller*, we upheld the condition because "[i]nasmuch as Miller's previous history was indicative to the [t]rial [j]udge that alcohol was a substantial contributing factor to his legal transgressions the imposition of the condition is certainly protective of the public interest" and may help to rehabilitate the offender by ending his addiction to alcohol.[27] In *United States v. Johnson*, we upheld a "requirement that [the defendant] submit to drug abuse treatment and mental health counseling and refrain from alcohol use

---

[25]*United States v. Prendergast*, 979 F.2d 1289, 1293 (8th Cir. 1992).

[26]*United States v. Modena*, 302 F.3d 626, 636 (6th Cir. 2002).

[27]*United States v. Miller*, 549 F.2d 105, 107 (9th Cir. 1976).

during and after treatment" because, inter alia, the defendant had "a long history of substance abuse and violent aggression" and "the record . . . shows that [he] has been involved in alcohol-related incidents."[28] In *United States v. Maciel-Vasquez*, we upheld a no alcohol condition because we rejected the defendant's contention that he "has never been convicted of an alcohol-related crime" and that "there is nothing to suggest that alcohol has ever caused problems in his life."[29] We did so because the record showed that the defendant had a prior conviction for driving under the influence, a prior arrest for possession of an open bottle of alcohol, and a history of drug abuse.[30] And, most recently, in *United States v. Sales*, we upheld a no alcohol provision only because "the record . . . revealed [the defendant's] history of substance abuse and his need for outpatient substance abuse treatment, as well as his history of depression."[31]

The best case for the government is *United States v. Carter*.[32] In *Carter*, we upheld the no alcohol condition even though Carter had "no history of drug or alcohol abuse."[33] But we only did so because "there was . . . evidence before the district court that Carter had attempted suicide by overdosing on migraine medication" and because "the district court noted that Carter's behavior had been unstable."[34] Indeed, we specifically distinguished *Carter* from the Eighth Circuit's holding in *United States v. Prendergast* because the defendant in that case had not "displayed Carter's erratic behavior" and had not

---

[28]*United States v. Johnson*, 998 F.2d 696, 699 (9th Cir. 1993).

[29]*United States v. Maciel-Vasquez*, 458 F.3d 994, 996 (9th Cir. 2006).

[30]*Id.*

[31]*United States v. Sales*, 476 F.3d 732, 735-36 (9th Cir. 2007).

[32]*United States v. Carter*, 159 F.3d 397 (9th Cir. 1998).

[33]*Id.* at 401.

[34]*Id.*

"attempted suicide by overdosing on prescription medications."[35]

**[10]** For essentially the same reasons, *Carter* is not applicable here. There was absolutely no evidence of any type of substance abuse or any erratic behavior of the kind in *Carter*. And the judge expressly noted that he did not think Betts had a problem with drugs or alcohol and that he did not consider Betts to be at risk of future substance abuse. In short, contrary to the rationale of our opinions affirming the imposition of the no alcohol condition, nothing suggests that the condition is related to (or necessary for) protecting the public, rehabilitating Betts, or providing adequate deterrence.

At the sentencing hearing, the judge said to the federal defender, "I know the blanket position of your office concerning search and seizure conditions and alcohol conditions and narcotics conditions," and "I am not going to harm your client because of it," but in telling clients not to answer questions about these things, "you leave the court defenseless [so] there has to be some presumption that it's really the client's responsibility to disclose." The judge went on to say that his "guess is that you don't have any narcotics background or any alcohol background, but if you did, it might be de minimis."

Thus the judge made it perfectly clear that the alcohol abstention requirement had nothing to do with any thought about Betts as an individual and the risk of alcohol abuse contributing to further crime. Rather, he told defense counsel "I find fault with that blanket policy on your office's part," and "[u]nless you give me something to work with, then I am going to find these conditions and impose them time after time. So you might rethink it. Not you personally, but your office, and carry that message." The judge expressly stated that he imposed the alcohol abstention requirement because "the court has no information, nor a description from you,

---

[35]*Id.* at n.4.

concerning any past alcohol abuse," and "there has to be an affirmative duty on the defendant . . . to be completely candid and truthful with the court through the probation office."

There could not be a clearer case of imposing a discretionary condition without a reason relating to the individual defendant.

This was error. The statute permits a discretionary supervised release condition to be imposed only "to the extent that such condition . . . involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in sections 3553(a)(2)(B), (C), and (D).[36] Moderate consumption of alcohol does not rise to the dignity of our sacred liberties, such as freedom of speech, but the freedom to drink a beer while sitting in a recliner and watching a football game is nevertheless a liberty people have, and it is probably exercised by more people than the liberty to publish a political opinion. Liberties can be taken away during supervised release to deter crime, protect the public, and provide correctional treatment,[37] but that is not why it was taken away in this case.

The court explains that it took away this liberty to change federal defender office policy by imposing the burden on defendants to answer probation officers' questions about drugs and alcohol. We need not reach any constitutional question that might arise under the Fifth Amendment, because the parties have not raised such a question and the statute does not support the burden to volunteer information that the court imposed. We do not understand how a federal defender's office or private law firm could, consistent with a lawyer's ethical duties, adopt a policy sacrificing a client's interest to the interests of criminal defendants as a class, but this is also a question we need not reach.

---

[36]18 U.S.C. § 3583(d)(2).

[37]18 U.S.C. §§ 3553(a)(2)(B),(C) and (D), and 3583(d)(2).

**[11]** The bureaucratic reason for the sentence, to set court policy against federal defender office policy in order to compel a change in federal defenders' office policy, is prohibited in the context of sentencing by the requirement in 18 U.S.C. § 3553(a)(1) that the court must consider "the history and characteristics of the defendant." Sentencing must, under section 3553, be individualized.[38] Congress can make non individualized policies, but not judges. We squarely rejected the proposition that the defendant has the burden to come forward with information in a decision that came down after the sentencing in this case, *United States v. Weber*.[39] We held in *Weber* that the government bears the burden to demonstrate that the discretionary supervised release condition is appropriate for the particular case.[40] The defendant does not bear the burden to demonstrate that a discretionary condition is unnecessary.[41]

This is not to say that there is anything wrong generally with supervised release conditions requiring abstention from alcohol. Many people commit crimes when they drink too much, and such conditions are often necessary to protect the public and provide correctional treatment. We have upheld abstention conditions where there is some indication in the record of a problem of abuse.[42] Frequently the need for abstention is obvious from the defendant's criminal history, and the court does not need any admissions from the defendant, because of such past offenses as drunk driving.[43] But the decision has to be individualized, not a matter of policy applicable without regard to the individual defendant.

---

[38]*Weber*, 451 F.3d at 566 (9th Cir. 2006) (quotation omitted).

[39]*Id.* at 558.

[40]*Id.* at 558-59.

[41]*Id.*

[42]*Maciel-Vasquez*, 458 F.3d at 996.

[43]*Id.*

## CONCLUSION

The employment and the search conditions were proper. The windfall and the abstention conditions were error. We therefore VACATE the sentence and REMAND for resentencing.