**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

IBRAHIM FAHAB BARE,
    *Defendant-Appellant*.

No. 14-10475

D.C. No.
3:12-cr-08142-NVW-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
August 13, 2015—San Francisco, California

Filed November 24, 2015

Before: Alex Kozinski and Richard C. Tallman, Circuit
Judges, and Lee H. Rosenthal,* District Judge.

Opinion by Judge Tallman;
Dissent by Judge Kozinski

---

* The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a sentence imposed upon a defendant, a non-Indian who lives on tribal land, for two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The panel held that the district court did not err in applying a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use of a firearm in connection with another felony offense. The panel held that due to the Assimilative Crimes Act, it does not matter whether the requisite felony offense occurred on tribal lands or within the state's jurisdiction in order to apply the § 2K2.1(b)(6)(B) enhancement. The panel concluded that the district court therefore properly applied the enhancement based on the defendant discharging a firearm over the head of an Indian while on the Navajo Reservation, which if committed elsewhere in Arizona, would qualify as felony disorderly conduct under Arizona Revised Statutes § 13-2904(A)(6).

The panel held that the district court did not abuse its discretion by imposing a condition of supervised release permitting searches of the defendant's computers and other electronic devices by a probation officer. The panel held that so long as a district court makes a factual finding establishing some nexus between computer use and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), or

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(a)(2)(D), it is not an abuse of discretion for a district court to impose a condition of supervised release permitting the search of a defendant's personal computers. The panel held that the district court's finding that a nexus existed between the defendant's potential computer use while he remains under supervised release and the need to deter his future criminal conduct—i.e., repeating the possession and pawning of prohibited firearms—was not clearly erroneous and was well-supported by the facts.

Judge Kozinski dissented from the portion of the opinion approving the supervised release condition. He wrote that the majority disregards the command in 18 U.S.C. § 3583(d)(2)—that supervised release conditions impose "no greater deprivation of liberty than is reasonably necessary" to achieve the goals of supervised release—by allowing probation officers to search the defendant's computer at any time, for any reason, even though the defendant did not use a computer to carry out his crime, and (so far as the panel knows) did not even own a computer when he committed the offense.

## COUNSEL

Keith J. Hilzendeger (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender, Phoenix, Arizona, for Defendant-Appellant.

Lacy Cooper (argued), Assistant United States Attorney; John S. Leonardo, United States Attorney; Mark S. Kokanovich, Assistant United States Attorney, Deputy Appellate Chief, Phoenix, Arizona, for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

On December 13, 2012, a jury convicted Ibrahim Fahab Bare—a non-Indian who lives on tribal land with his common-law wife—of two counts of being a felon in possession of a firearm. Bare challenges his 4-level sentencing enhancement for his use of a firearm in connection with another felony offense, as well as his condition of supervised release permitting searches of his computers and other electronic devices by a United States Probation Officer. We hold that due to the Assimilative Crimes Act ("ACA"), it does not matter whether the requisite felony offense occurred on tribal lands or within the state's jurisdiction in order to apply an enhancement for discharging a firearm under United States Sentencing Guidelines § 2K2.1(b)(6)(B). We further hold that so long as a district court makes a properly supported factual finding from the record before it, establishing some nexus between computer use and the need for the sentence imposed to accomplish deterrence, protection of the public, or rehabilitation of the defendant, it is not an abuse of discretion for the district court to impose a condition of supervised release permitting the search of a defendant's personal computers. Because the district court made such a permissible factual finding establishing the nexus here, and because Bare is subject to punishment for committing the felony offense of disorderly conduct involving weapons in connection with his felon in possession conviction, we affirm.

## I

On April 9, 2012, Navajo Tribal Police responded to a call reporting shots fired at Bare's residence located on the

Navajo Reservation in Whippoorwill, Arizona.[1] Witnesses reported to officers that Bare and Keithaniel Begay began to argue in the threshold of Bare's residence over Bare's refusal to provide cigarettes to an intoxicated Begay. As the argument escalated, Bare pulled out a pistol and pointed it at Begay. Unarmed, Begay turned and started to walk away from the residence when Bare fired a shot over Begay's head. According to one of Begay's sisters, Bare also threatened to kill Begay. Another sister—who is also Bare's neighbor—reported that Bare threatened her by warning, "You know I can kill you."

Bare's common-law wife consented to a search of their shared residence. Officers recovered a nine-millimeter Jimenez Arms pistol inside a bag of dog food located in the dining room, as well as one spent shell casing located on the ground outside the home. After ignoring multiple commands to submit to arrest, the officers pepper sprayed Bare and took him into custody. The case was referred to federal authorities for prosecution.

On May 7, 2012, the United States filed a complaint in federal court alleging Bare committed a felony firearms offense. Because Bare failed to appear in court, federal agents went to his residence with an arrest warrant. When the agents approached, Bare ran inside the residence, locked the front door, and began destroying items. After Bare unlocked

---

[1] To the extent we refer to facts contained in the Presentence Report to discuss relevant portions of Bare's offense conduct and criminal history, we partially lift the order sealing the Presentence Report. The Presentence Report was expressly adopted and considered by the district court in fashioning the appropriate sentence and conditions at issue here.

the door and emerged from the residence, agents took him into custody and searched the home.  The search revealed:

> An Elk River Tool and Die Inc. model ERTD AK47 7.62 caliber [assault] rifle with an attached magazine loaded with 47 rounds of 7.62x39 ammunition[;] a Savage model 110E .30-06 caliber rifle with six rounds attached to the butt of the rifle, . . . a BB handgun, two ammunition magazines, 81 rounds of various brand 9-millimeter ammunition, 50 rounds of Remington .45 caliber ammunition, and 50 rounds of Remington .32 caliber ammunition.

The agents also found pills, drugs, a digital scale, and a financial ledger "titled 'My Money' with names and numbers next to the names."  Bare admitted he knew he could not possess firearms due to prior felony convictions.[2]

Bare denied ownership of the weapons.  He claimed two of the firearms belonged to family members, and the rest "were in his possession as they were 'pawned' as part of his self-employed, in-home pawn business."  Bare's common-law wife also told investigators during an interview that she "believed the financial ledger discovered in the residence was a list of Bare's pawn customers."  She acknowledged her prior awareness of the firearms that had been found in their home and told agents she thought Bare had "taken them in pawn."

---

[2] Bare was convicted in 2000 for possession of burglary tools, and in 2001 and 2002 for resisting arrest, all felonies.

On December 13, 2012, a jury found Bare guilty of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## II

The district court initially sentenced Bare on April 8, 2013. It applied a base offense level of 22 after treating Bare's felony for resisting arrest as a crime of violence. *See* U.S.S.G. § 2K2.1(a)(3)(B) (base offense level of 22 for "unlawful receipt, possession, or transportation of firearms or ammunition" if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence"). It also applied a 2-level enhancement because the offense involved at least three firearms. *See id.* § 2K2.1(b)(1)(A). At the time of Bare's initial sentencing, the United States Probation Office did not recommend, and the district court did not therefore adopt, a 4-level enhancement for the use of a firearm in connection with another felony offense. *See id.* § 2K2.1(b)(6)(B). Bare's total offense level (24), coupled with his criminal history category (II), resulted in an advisory Guidelines range of 57–71 months.

At sentencing, the district court explained Bare's offense was "perhaps one of the worst felon in possession cases I have seen in my nine years as a judge of this court . . . because of the length, the awareness of the wrongfulness, the commercial possession of taking of firearms, [and] the discharge of the firearm." It sentenced Bare to 57 months imprisonment. In addition, the district court imposed a computer search condition of supervised release. It overruled Bare's objection to this condition, expressly finding a nexus between Bare's operation of a pawn business involving

firearms and the ability to store records related to that business on computers or other electronic devices: "I do see a nexus here . . . because there was a commercial context to what he was doing that goes directly to the offense in possession."

Bare appealed his conviction and sentence. *United States v. Bare*, 583 F. App'x 721, 722 (9th Cir. 2014). We affirmed his conviction, but vacated his sentence because the district court erred when calculating his base offense level. *Id.* at 723–24. We held Bare had not previously been convicted of a crime of violence, which "might well [have] affect[ed] the district court's sentencing decision." *Id.* at 724; *see also United States v. Flores-Cordero*, 723 F.3d 1085, 1088 (9th Cir. 2013) ("[A]n Arizona conviction for resisting arrest cannot be considered categorically a crime of violence under the federal Sentencing Guidelines.").

Bare's resentencing took place on October 21, 2014. Upon remand, Bare's corrected base offense level was 20. *See* U.S.S.G. § 2K2.1(a)(4). The district court once again applied a 2-level enhancement because the offense involved at least three firearms. *See id.* § 2K2.1(b)(1)(A). In addition, it applied the 4-level enhancement for the use of a firearm in connection with another felony offense—disorderly conduct in violation of Arizona Revised Statutes § 13-2904(A)(6). *See id.* § 2K2.1(b)(6)(B). Probation explained it was an error to fail to include this enhancement in Bare's original Presentence Report. Bare's resulting total offense level was 26, with an advisory Guidelines range of 70–87 months.

The district court incorporated its view that the "comments in the first sentencing [we]re all still correct," and emphasized:

[A]s I remarked the last time, I think this is probably the most serious felon in possession case that I have seen in my years on the Court, most serious in terms of not just possession but discharging the firearm in an environment of uncontrolled anger with a history of uncontrollable anger; a history of violence, fortunately, violence that didn't result in any serious injury; but the history of prior incarceration with a string of discipline violations during the prior incarceration.

So this is a case that's really the top end of the chart in terms of the seriousness of the offense, the need for the sentence to respect the seriousness of the offense, to promote respect for the law, to provide deterrence to [Bare], is critically important for the safety of the community . . . .

Recognizing Bare's recent success and lack of disciplinary infractions while in custody on the latest charges, the district court sentenced him to 54 months imprisonment.

Finally, the district court reimposed the computer search condition of supervised release: "You shall submit your person, property, house, residence, vehicles, papers, computers as defined in 18 U.S.C. § 1030(e)(1), other electronic communications or data storage devices or media, or office, to a search conducted by a probation officer. . . . You shall warn any other occupants that the premises may be subject to searches pursuant to this condition." Bare objected to the portion of this condition as it related to computers or "data compilations," but did not object to the other aspects of

the search condition.**[3]**   The district court overruled Bare's objection, finding that "in light of the fact that Mr. Bare was taking firearms in connection with a business activity to pawn, it's appropriate to search computers where typically such records are often kept."

### III

"[W]e review the district court's interpretation of the Sentencing Guidelines de novo." *United States v. Valenzuela*, 495 F.3d 1127, 1130 (9th Cir. 2007) (quotation omitted). "We review conditions of supervised release for abuse of discretion." *United States v. Betts*, 511 F.3d 872, 874 (9th Cir. 2007). "In applying this standard of review, 'we give considerable deference to a district court's determination of the appropriate supervised release conditions,' recognizing that 'a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude.'" *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008) (quoting *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)).

### IV

A 4-level enhancement is appropriate when the defendant "[u]sed or possessed any firearm or ammunition in connection with another felony offense[.]"   U.S.S.G. § 2K2.1(b)(6)(B).   Such a "felony offense" "means any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of

---

**[3]** During oral argument, Bare confirmed that he challenges the condition only with respect to computers or electronic devices.

whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1 cmt. 14(C).

Bare's actions, if committed elsewhere in Arizona, would qualify as felony disorderly conduct under Arizona Revised Statutes § 13-2904(A)(6) for "recklessly handl[ing], display[ing] or discharg[ing] a deadly or dangerous instrument." *See* Ariz. Rev. Stat. § 13-2904(B) (classifying disorderly conduct under subsection (A)(6) as "a class 6 felony"). Because Bare, a non-Indian, discharged a firearm over the head of an Indian while on the Navajo Reservation, he is subject to punishment in Indian Country—by the United States—which incorporates in the federal offense the elements of Arizona's disorderly conduct statute under the ACA. *See* 18 U.S.C. §§ 13, 1152; *United States v. Marcyes*, 557 F.2d 1361, 1364 (9th Cir. 1977) ("[T]he ACA is a general law of the United States made applicable to Indian reservations by 18 U.S.C. [§] 1152."); *see also United States v. Kaufman*, 862 F.2d 236, 237–38 (9th Cir. 1988) (per curiam) (finding the ACA appropriate to punish a person who purposefully pointed a firearm at another person in violation of an Oregon statute while "within a federal enclave").

The district court properly considered what is otherwise a felony violation of Arizona Revised Statutes § 13-2904(A)(6), which supported its application of the enhancement. *See United States v. Turnipseed*, 159 F.3d 383, 384, 386 (9th Cir. 1988) (upholding application of enhancement where defendant fired a handgun in the direction of several youths in violation of a Washington assault statute). We therefore hold that the district court did not err in adding to Bare's base offense level a 4-level enhancement under § 2K2.1(b)(6)(B) for firing a shot near Begay during their altercation.

**V**

"The principal statutory provision that constrains the district court's discretion to impose conditions of supervised release is 18 U.S.C. § 3583(d)." *Stoterau*, 524 F.3d at 1002. "[T]he conditions imposed are permissible only if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender." *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)). "The supervised release conditions need not relate to the offense for which [the defendant] was convicted as long as they satisfy any of the conditions set forth [in § 3583(d)(1)]." *Id.*; *see also United States v. Blinkinsop*, 606 F.3d 1110, 1119 (9th Cir. 2010) ("'A condition of supervised release does not have to be related to the offense of conviction,' because the sentencing judge is statutorily required 'to look forward in time to crimes that may be committed in the future' by the convicted defendant." (quoting *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004)).

**A**

While we have on occasion vacated conditions of supervised release limiting or restricting the ability to use computers and access the Internet, we have not taken such a heavy hand with respect to general search conditions of personal computers. *Compare United States v. Barsumyan*, 517 F.3d 1154, 1161 (9th Cir. 2008) ("[A] mere nexus between the crime and a computer does not justify proscribing the use of anything containing a circuit board or microchips."), *with United States v. Morris*, 485 F. App'x 213, 216 (9th Cir. 2012) ("Morris has cited no authority that clearly supports her argument that a suspicionless computer

search-and-seizure condition may not be imposed on a defendant who only tangentially made use of a computer in the course of her crime, nor authority that holds that the district court's computer search conditions are impermissibly broad.").

We hold that so long as a district court makes a factual finding establishing some nexus between computer use and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), or (a)(2)(D)—which was amply supported by the record here—it is not an abuse of discretion for a district court to impose a condition of supervised release permitting the search of a defendant's personal computers. *See United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988) (upholding probation condition with "a reasonable nexus with the twin goals of probation, rehabilitation and protection of the public"); *see also United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc) (explaining that when reviewing a district court's actions for abuse of discretion, "we look to whether the district court's findings of fact, and its application of those findings of fact . . ., were illogical, implausible, or without support in inferences that may be drawn from facts in the record"). In articulating this rule, we are guided by our prior decisions in *United States v. Sales*, 476 F.3d 732 (9th Cir. 2007), and *United States v. Betts*, 511 F.3d 872 (9th Cir. 2007). We held in *Sales* that a condition permitting the search and seizure of any computer-related device "used by the defendant" was overbroad because it applied to computers used for work or personal purposes, whether owned by the defendant or others. 476 F.3d at 734, 737. For that reason, we limit our holding to personal computers or electronic devices over which a defendant has control and where he has both the obligation

and the ability to inform other users that the computers or devices may be subject to search.

In *Betts*, we affirmed a condition for warrantless searches "at any time" of the defendant's "person and property," where "property" presumably included computers. *See* 511 F.3d at 876. Because "[p]eople on supervised release have not completed their sentences, they are serving them," we drew a parallel between state parolees and federal felons who are out on supervised release.[4] *Id.* Therefore, in the wake of *Samson v. California*, 547 U.S. 843 (2006)—which held that "[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality"—we concluded that "[w]e cannot characterize the judge's exercise of discretion as an abuse, even though it is very intrusive." *Betts*, 511 F.3d at 876.[5]

---

[4] We reject Bare's assertion of the Fourth Amendment protections outlined in *Riley v. California*, 134 S. Ct. 2473, 2488–89 (2014). He does not warrant the same level of protections as arrestees because—as a convicted federal prisoner still serving a portion of his sentence—his Fourth Amendment rights are diminished. *See Hudson v. Palmer*, 468 U.S. 517, 524 (1984) ("[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights. These constraints on inmates, and in some cases the complete withdrawal of certain rights, are justified by the considerations underlying our penal system." (quotation and citations omitted)); *Samson v. California*, 547 U.S. 843, 853 (2006) ("[T]his Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.").

[5] "California law provide[d] that every prisoner eligible for release on state parole 'shall agree in writing to be subject to search or seizure . . . at any time of the day or night, with or without a search warrant and with or

Once a district court meets the nexus requirement outlined above, then, under *Betts*, a general search provision of a defendant's computers or other electronic devices does not amount to an abuse of discretion.

## B

The district court made a factual finding that a nexus existed here between Bare's potential computer use while he remains under supervised release and the need to deter his future criminal conduct, i.e., repeating the possession and pawning of prohibited firearms. We disturb the nexus finding only if it is clearly erroneous. *See Hinkson*, 585 F.3d at 1259. The district court's nexus finding was not clearly erroneous and, in fact, was well-supported by the facts of the case. As articulated by the Government during Bare's original sentencing, evidence existed that Bare kept paper records of his illicit firearms pawn business. Permitting a search of only paper records—but not computers—might enable Bare to evade discovery of recidivist activity by switching his records into an electronic format. Allowing such a loophole to exist would, as denounced in *Samson*, give Bare a "greater opportunity to anticipate searches and conceal criminality." 547 U.S. at 854.[6] To illustrate, we will never know what

---

without cause." *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code § 3067(a) (2000)); *see also* Cal. Penal Code § 3067(b)(3) (2015) (requiring notice to any inmate eligible for release or parole "that he or she is subject to search or seizure . . . at any time of the day or night, with or without a search warrant or with or without cause.").

[6] The dissent misconstrues our rationale. *See* Dissent at 19. The district court did not look to whether the "defendant's crime could be committed with the help of a computer" or "hypothesi[ze] about how the crime might have been committed." *Id*. at 19. Instead, the district court properly

incriminating evidence Bare destroyed while he kept arresting federal officers at bay.

Although the dissent requires a direct nexus between the offense conduct and the computer search condition, the law does not.[7] *T.M.*, 330 F.3d at 1240 ("The supervised release conditions need not relate to the offense for which [the

---

looked "forward in time to crimes that may be committed in the future," as 18 U.S.C. § 3553(a)(2)(C) requires. *Wise*, 391 F.3d at 1031. Under the dissent's rationale, the computer search condition was only appropriate if Bare used a computer in the offense. But the district court was not restricted to imposing conditions that would prevent "further crimes of the defendant" that were identical to his offense. The standard for imposing the computer search condition is clear: the condition must be "reasonably related" to preventing and deterring further criminal conduct. 18 U.S.C. § 3583(d)(1). The district court met that standard here.

[7] The dissent cites two cases from a California court of appeal to support the position that a nexus is required: *In re Roman P.*, No. A143468, 2015 WL 6604609, at *2–3 (Cal. Ct. App. Oct. 30, 2015) (unpublished and noncitable under Cal. R. Ct. 8.1115(a)); and *In re Erica R.*, 192 Cal. Rptr. 3d 919, 922–23 (Cal. Ct. App. 2015). But two other divisions of the same California court of appeal have expressly rejected the reasoning of both of those cases:

> Nothing in . . . any other case of which we are aware, requires a connection between a probationer's past conduct and the locations that may be searched to uphold a search condition . . . . Given the ubiquity of electronic devices, particularly cell phones, we cannot say that an electronics search condition is unreasonable simply because the record does not show that the probationer necessarily has access to such devices or has used them to engage in illegal activity.

*In re Patrick F.*, No. A143586, 2015 WL 7009056, at *3 (Cal. Ct. App. Nov. 12, 2015) (citing *In re Ricardo P.*, 193 Cal. Rptr. 3d 883, 893 (Cal. Ct. App. 2015) and expressly disagreeing with *In re Erica R.*).

defendant] was convicted as long as they satisfy any of the conditions set forth [in § 3583(d)(1)]."). The law only requires some nexus between the computer search condition and furthering "the goal of deterrence, protection of the public, or rehabilitation of the offender." *Id*.; *see also United States v. Manuel*, 601 F. App'x 585, 585–86 (9th Cir. 2015) (upholding a computer search condition—imposed due to Department of Corrections records indicating gang affiliations or involvement—for a defendant convicted of being a felon in possession of ammunition); *United States v. Hayes*, 283 F. App'x 589, 594 (9th Cir. 2008) (upholding a computer monitoring condition—imposed due to evidence of the use of text messaging to threaten and harass former wives—for a defendant convicted of making a false statement to acquire a firearm).

Here, the circumstances of Bare's offense yield a demonstrable nexus between both his offense *and* the need for adequate deterrence. His conviction for being a felon in possession of firearms arose directly out of his home-based commercial pawn business. We are mindful that one of the weapons Bare took in pawn was an AK47, with a 47-round clip, a weapon existing for no other purpose than to efficiently kill others. Because future records for such a business might easily be kept on computers, the district court did not abuse its discretion when imposing the electronic search condition. No case in our Circuit dictates the opposite conclusion.[8] Those cases striking down computer-related

---

[8] Our holding does not conflict with *Sales*. Although the dissent believes that the *Sales* defendant, who used a computer, scanner, and printer to counterfeit currency, "could have used the internet to commit his counterfeiting crime and might do so the next time," *see* Dissent at 20 this court in *Sales* did not share that belief. In fact, we expressly found that

conditions of supervised release involve different and much broader conditions than the one at issue here. *See, e.g.*, *Barsumyan*, 517 F.3d at 1160–62 (striking condition prohibiting the defendant from "accessing or possessing any computer or computer-related devices in any manner, or for any purpose"); *Sales*, 476 F.3d at 736–37 (striking condition requiring the defendant to "seek and obtain approval from his probation officer before using any particular computer or computer-related device").

Even Bare himself acknowledges that some computer-related search condition would be reasonable:

> I haven't meant to foreclose entirely a search here. The challenge I presented . . . is not that this Court should reverse and direct the district court not to impose this condition at all. My core contention has always been that the judge didn't make the right findings and this Court should instruct him to do so.

We conclude that the district court's nexus findings were sufficient to properly support the computer search condition imposed. There was no abuse of discretion in doing so.

**AFFIRMED.**

---

"the record suggests no such link between the internet and counterfeiting," when ruling that the condition restricting Sales's computer and internet *use* was overly broad. 476 F.3d at 736 n.2. In contrast, the district court here found the nexus required for the computer search condition because computers are "typically" where business records are "often kept."

KOZINSKI, Circuit Judge, dissenting in part:

Persons on supervised release may have diminished expectations of privacy, but they have privacy rights nonetheless. Moreover, Congress has instructed us to adopt conditions of supervised release that impose "no greater deprivation of liberty than is reasonably necessary" to achieve the goals of supervised release. 18 U.S.C. § 3583(d)(2). The majority today disregards this command by allowing probation officers to search defendant's computer at any time, for any reason or no reason, even though defendant did not use a computer to carry out his crime, and (so far as we know) did not even own a computer when he committed the offense.

The majority's rationale, that defendant's crime *could* be committed with the help of a computer, is no limitation at all. Pretty much any federal crime can be committed by using a computer in some way—to maintain records, to case the premises using Google Street View or to track down accomplices, methods and supplies necessary for committing the crime. If a hypothesis about how the crime *might* have been committed is a sufficient justification for imposing a supervised release condition, then *any* condition can be justified by supposing that the crime could be committed in a way that's different from the method employed by the defendant. I cannot subscribe to such a broad and amorphous standard.

The Supreme Court recently reminded us of the massive intrusion into personal privacy that occurs when police rifle through the contents of a smartphone, which the Court characterized as a "minicomputer[]." *Riley* v. *California*, 134 S. Ct. 2473, 2489 (2014). The Court criticized

electronics searches for allowing police to reconstruct "[t]he sum of an individual's private life." *Id.* The search of all of defendant's computers—desktops, laptops, smartphones— would certainly do no less. Such an intrusion must be based on a substantial justification, which is why none of our published opinions approve an electronics search condition where the crime itself doesn't involve the use of a computer. And after *Riley*, other courts have invalidated expansive electronics search conditions that lack a nexus to the defendant's crime. *See, e.g.*, *In re Roman P.*, No. A143468, 2015 WL 6604609, at *2–3 (Cal. Ct. App. Oct. 30, 2015); *In re Erica R.*, 192 Cal. Rptr. 3d 919, 922–23 (Cal. Ct. App. 2015).

The majority cites two cases for the contrary proposition, but this reliance is misplaced. *Betts* merely refers to searches of the defendant's "person and property," which the majority "presumes" includes computers. *See United States* v. *Betts*, 511 F.3d 872, 876 (9th Cir. 2007); Maj. Op. at 14–15. But computers were not mentioned in *Betts*, so that case provides no support for today's ruling. And *Sales* cuts entirely against the majority. There we vacated a supervised release condition requiring the defendant to obtain approval from a probation officer before accessing the web, because his crime "in no way involved or relied upon the internet." *United States* v. *Sales*, 476 F.3d 732, 736 (9th Cir. 2007). Using the rationale of today's opinion, *Sales* would have come out the other way because the defendant there *could* have used the internet to commit his counterfeiting crime and might do so next time. *Betts* and *Sales* are in conflict.

The majority also cites two unpublished cases to support its decision. Maj. Op. at 17. But our rules clearly state that unpublished dispositions aren't authority. Ninth Cir. Rule 36-

3(a).  And for good reason:  They generally aren't worded carefully enough to govern future cases, nor are they exposed to the type of en banc scrutiny to which published opinions are subjected.  *See Hart* v. *Massanari*, 266 F.3d 1155, 1178–79 (9th Cir. 2001).  In any event, the memdispos don't help the majority.  In *United States* v. *Manuel*, the defendant challenged his computer search condition because it was imposed based on the incorrect assumption that he was a gang member—not because he didn't use electronics in committing his crime.  601 F. App'x 585 (9th Cir. 2015).  And the *Hayes* defendant used a cell phone to send threatening messages, so the electronic search condition was reasonably related to his previous offenses.  *United States* v. *Hayes*, 283 F. App'x 589 (9th Cir. 2008).  The majority is grasping at straws.

Bare obtained firearms through a small-scale pawn operation he ran out of his home on the Whippoorwill Navajo reservation.  So informal was his enterprise that FBI agents didn't find a single electronic device that was used in connection with the business at his house.  They discovered only a paper ledger with names and figures.  As there's no evidence linking Bare's business to electronics, searching his computers is an unjustifiable intrusion into his privacy and that of his family.  Because the majority's new rule breaks with our precedents and doesn't advance the goals of supervised release, I respectfully dissent from the portion of the opinion approving this supervised release condition.